626 S.E.2d 816

**SOUTH CAROLINA DEPARTMENT OF NATURAL RESOURCES, Respondent,**

v.

**Andy McDONALD, Jason Martin and Jonathan Corn, Appellants.**

**No. 4081.**

Court of Appeals of South Carolina.

Submitted Jan. 1, 2006.

Decided Feb. 13, 2006.

James Wofford Bannister, of Greenville, for Appellants.

James Andrew Quinn, of Columbia, for Respondent.

GOOLSBY, J.:

Andy McDonald, Jason Martin, and Jonathan Corn (Defendants) were convicted in magistrate's court of hunting deer over bait in Abbeville County. The circuit court affirmed the convictions, rejecting Defendants' argument that the regulation they allegedly violated was ineffective on the date in question because the statute on which it was based had been repealed. Defendants appeal to this court. We reverse.[1]

## FACTS AND PROCEDURAL HISTORY

On May 26, 1995, Regulation 2.9 was published in Volume 19, Issue 5 of the South Carolina State Register. The South Carolina Wildlife and Marine Resources Department (now the South Carolina Department of Natural Resources) enacted Regulation 2.9 as part of 27 S.C.Code Ann. Regs. 123–40

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

(1982). Specifically, Regulation 2.9 prohibits (1) "baiting or hunting over a baited area or taking wildlife over a baited area" on all wildlife management area lands [2]; and (2) baiting, hunting over bait, or taking over bait "Big Game" on "other lands within the Central Piedmont, Western Piedmont and Mountain Hunt Units." [3]

When the Department promulgated Regulation 2.9, it incorrectly cited only South Carolina Code section 50–9–150 as the enabling statutory authority. Section 50–9–150 granted the Department authority to prescribe methods for taking game; however, this authority was limited to activity on wildlife management areas.[4] Although South Carolina Code section 50–11–310 authorized the Department to regulate deer hunting on land other than wildlife management areas,[5] the Department did not cite this section when it promulgated Regulation 2.9.

The time limit to challenge the procedural validity of Regulation 2.9 expired without incident on May 26, 1996.[6] On May 30, 1996, the South Carolina General Assembly passed Act 372, which amended Chapter 9 of Title 50 of the South Carolina Code.[7] Although section 50–9–150 was not listed among the statutes expressly repealed by Act 372, the legislature significantly revised many of its provisions and incorpo-

---

2. Regulation 2.9, 27 S.C.Code Ann. Regs. 123–40 (1982).

3. *Id.*

4. *See* 1993 S.C. Acts 2647–48 (containing the version of section 50–9–150 in effect during the promulgation of Regulation 2.9 and stating in pertinent part: "The department may establish open and closed seasons, bag limits, and methods for taking game on all wildlife management areas.").

5. *See* S.C.Code Ann. § 50–11–310(D) (Supp.2005) ("In Game Zones 1, 2, and 4, the department may promulgate regulations in accordance with the Administrative Procedures Act to establish the methods for hunting and taking of deer and for other restrictions for hunting and taking deer.").

6. *See* S.C.Code Ann. § 1–23–110(D) (2005) ("A proceeding to contest a regulation on the ground of compliance with the procedural requirements of this section must be commenced within one year from the effective date of the regulation.").

7. 1996 S.C. Acts 2269–84.

rated them elsewhere within Title 50.[8]   Act 372 took effect July 1, 1996.[9]

On November 10, 2001, Eddie Monts, an officer with the South Carolina Department of Natural Resources observed Defendants hunting deer over bait in Abbeville County. Monts arrested Defendants and charged them under South Carolina Code section 50–11–350 for violating Regulation 2.9.[10] From the briefs and record on appeal, it appears Defendants were not hunting in a wildlife management area when Monts apprehended them.

After denying a motion by Defendants to dismiss the charges for lack of subject matter jurisdiction, the magistrate conducted a trial and convicted Defendants as charged.   Defendants appealed to the Court of Common Pleas for Abbeville County, which heard the matter on March 4, 2004.   On April 15, 2004, the circuit court issued an opinion affirming the convictions.

## LAW/ANALYSIS

The dispositive issue in this appeal is whether the repeal of a statute given as the authority for the promulgation of an administrative regulation bars a prosecution for a violation of that regulation.   We hold it does, notwithstanding the presence of other statutory authority that arguably could have supported the regulation but was not cited when the agency promulgated the regulation.

■   "An administrative agency has only such powers as have been conferred by law and must act within the authority granted for that purpose." [11]   With regard to rulemaking, the

---

**8.**   Section 5 of Act 372 expressly repealed South Carolina Code sections 50–1–150, 50–1–170, 50–1–230, 50–11–2240, and 50–13–1140.  *Id.* at 2284.

**9.**  *Id.*

**10.**   South Carolina Code section 50–11–350 states the penalties for "illegally taking, attempting to take, having in one's possession, or killing deer" in wildlife management area lands and certain other regions.

**11.**  *Bazzle v. Huff,* 319 S.C. 443, 445, 462 S.E.2d 273, 274 (1995).

South Carolina Administrative Procedures Act requires an agency to give notice of the proposed action in the State Register [12] and to include in the notice "the agency's statutory authority for promulgating the regulation." [13]

■ "The general rule is that the repeal of a statute operates retrospectively, and has the effect of blotting it out as completely as if it had never existed and of putting an end to all proceedings under it." [14] Although an administrative agency may have the power to enforce a repealed statute, this authority exists only if there is an applicable savings clause and the violation at issue precedes the expiration date of the statute.[15]

The circuit court characterized the Department's failure to list the correct statutory authority for Regulation 2.9 as "merely a procedural error" and held that, under South Carolina Code section 1–23–110(D), a challenge had to have been made by May 26, 1996, one year after the effective date of the regulation.[16] The court concluded that "the statute of limitations has run on [Regulation 2.9]" and that "[b]ecause statutory authority for the regulation continued to exist after the repeal of S.C.Code § 50–9–150, the regulation remained in force."

We find the circuit court's analysis troubling for a number of reasons.

Initially, we had some concern as to whether section 50–9–150 had in fact been repealed. Although the 2005 supplement to Title 50 of the South Carolina Code indicates section 50–9–150 had been "Repealed by 1996 Act No. 372, § 2, eff. July 1, 1996," it was not among those statutes expressly repealed by this legislation, all of which were listed in section 5 of Act 372.

---

12. S.C.Code Ann. § 1–23–110(A)(1) (2005).

13. *Id.* § 1–23–110(A)(1)(c).

14. *In re Terrence M.,* 317 S.C. 212, 214, 452 S.E.2d 626, 627 (1994).

15. 2 Am.Jur.2d *Administrative Law* § 281, at 296 (1994).

16. *See* S.C.Code Ann. § 1–23–110(D) (2005) ("A proceeding to contest a regulation on the ground of noncompliance with the procedural requirements of this section must be commenced within one year from the effective date of the regulation.").

In addition, the general presumption against the legislative intention to repeal a statute when express terms of repeal are not used [17] and the fact that the General Assembly has not yet adopted the 2004 supplement [18] have prompted us to review the history of section 50–9–150 for the limited purpose of determining whether, in the present appeal, it can support Defendants' convictions.

Notwithstanding our initial concern, we hold that, for the purpose of deciding this appeal, it was correct to rely on the premise that section 50–9–150 had been repealed, at least to the extent that this statute cannot support the convictions at issue. The preamble to section 2 of Act 372, entitled "Hunting, fishing, and trapping licenses revised," states that the purpose of the section is to "further amend[ ]" Chapter 9, Title 50 of the South Carolina Code to read in a particular way, rather than to simply add or delete certain provisions.[19] Moreover, after examining the specific provisions of the version of section 50–9–150 in effect during the promulgation of Regulation 2.9,[20] we are of the opinion that the only one that has remained intact after the passage of Act 372 was the delegation of authority to the Department to "establish open and closed seasons, bag limits, and methods for hunting and

17. *See* 82 C.J.S. *Statutes* § 286, at 361 (1999) ("Where express terms of repeal are not used, usually the presumption is against an intention to repeal an earlier statute.").

18. As the notice at the front of each of the 2005 Cumulative Supplements to the Code of Laws of South Carolina 1976 Annotated states, "The 1987 through 2004 cumulative supplements were not adopted during the 1988 through the 2005 Sessions [of the General Assembly] and therefore are not official." Each notice also states that, when the corresponding 2005 supplement was published, it was not official. *See* Paula Gail Benson & Deborah Ann Davis, *A Guide to South Carolina Legal Research and Citation* 37 (1991) ("It is important to check for a notice on the cover or first page of a supplement to determine if the supplement has been adopted.").

19. *See* 73 Am.Jur.2d *Statutes* § 291, at 459 (2001) ("If the later act is intended to cover the entire subject and to be a substitute for the earlier act, the omitted parts are deemed to be repealed by implication. *This is true of an amendment which declares that the earlier statute will read in a particular way.*") (emphasis added).

20. This version is found at 1993 S.C. Acts 2647–48.

taking wildlife on all wildlife management areas."[21] As the Department appears to have conceded, however, this provision cannot support Regulation 2.9 insofar as that regulation governs hunting on lands that are not within wildlife management areas.[22]

■ Turning to the arguments Defendants have raised on appeal, we first question the significance the circuit court ascribed to the fact that Regulation 2.9 went unchallenged for one year after its publication in the State Register. This controversy does not concern procedural noncompliance in promulgating a regulation; rather, the question is whether the repeal of section 50–9–150, the statute referenced during the promulgation of Regulation 2.9, operates as a repeal of the regulation itself. We hold that it does.[23]

In so holding, we cite with favor *In re Terrence M.*,[24] on which Defendants rely in their appeals to both the circuit court and to this court. In that case, this court *sua sponte* vacated an adjudication of delinquency based on the repeal of the statute under which the juvenile was charged.[25]

The circuit court attempted to distinguish *Terrence M.* from the present controversy, relying on the argument that "Defendants violated a regulation that was backed by several points of statutory authority," reasoning that "[i]f separate statutory authority had existed in [*Terrence M.*], it would have been affirmed."

---

21. *See* S.C.Code Ann. § 50–11–2200(A)(3) (Supp.2005).

22. Regulation 2.9 provides in pertinent part as follows: "On all [wildlife management area] lands, baiting or hunting over a baited area or taking wildlife over a baited area is prohibited. On all other lands within the Central Piedmont, Western Piedmont and Mountain Hunt Units, Big Game cannot be baited, hunted over bait, or taken over bait."

23. *See* Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 23:34 (6th ed. 2005) ("The effect of the repeal of a statute ... is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute.").

24. 317 S.C. 212, 452 S.E.2d 626 (Ct.App.1994).

25. *Id.*

Irrespective of whether the delinquency adjudication in *Terrence M.* would have remained valid had there been other statutory authority that could have supported it, we are of the opinion that no court in this State has the authority to uphold · a regulation by gratuitously considering statutory authority that the enacting agency apparently failed to consider during the rulemaking process. We base this holding on *Global Van Lines, Inc. v. Interstate Commerce Commission,*[26] a case Defendants cited in their brief to this court.

In *Global Van Lines,* the Fifth Circuit Court of Appeals, in construing a provision of the Federal Administrative Procedures Act analogous to section 1–23–110(A)(1)(c), noted that Congress, when enacting the Act, stated that " '[a]gency notice must be sufficient to fairly apprise interested parties of the issues involved, so that they may present responsive data or argument relating thereto' "[27] and that " '[t]he required specification of legal authority must be done *with particularity.*' "[28] The court refused to determine whether the regulation at issue in the case could be upheld on the basis of a statute that had not been mentioned in the notice of proposed rulemaking, explaining as follows:

> [The Federal Administrative Procedures Act] ... at the very least requires that the legal grounds upon which the agency thought it was proceeding appear somewhere in the administrative record. A decision of that magnitude should not be left to the imagination of counsel on appeal, for "[t]he purpose of requiring a statement of the basis and purpose is to enable courts, which have the duty to exercise review, to be aware of the *legal and factual framework* underlying the agency's action." ... It has, moreover, been settled for at least forty years that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Speculations*

---

26. 714 F.2d 1290 (5th Cir.1983).

27. *Id.* at 1298 (quoting the Senate report on the bill).

28. *Id.* (quoting the House report, emphasis added by the Fifth Circuit Court of Appeals).

*about what might have been good reasons had the agency only thought of them do not suffice.*[29]

Likewise, we agree with Defendants that their convictions cannot be upheld on the basis of a statute that was never cited in the promulgation of the regulation that they were charged with violating.

## CONCLUSION

The prohibition in Regulation 2.9 against hunting over bait on locations outside wildlife management areas is no longer enforceable. The statute cited as the enabling legislation for the regulation is no longer in effect as enacted, and the only intact provision of the statute authorizes the Department of Natural Resources to regulate hunting only on wildlife management area lands. Because the violations at issue here concerned a defunct prohibition, Defendants' convictions were improper.[30]

**REVERSED.**

ANDERSON and SHORT, JJ., concur.

---

**29.** *Id.* at 1298–99 (citations omitted) (last emphasis added).

**30.** We do not address Defendants' argument concerning their right to due process. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).